Steven Clay VENTLING, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 83–128.

Supreme Court of Wyoming.

Feb. 15, 1984.

---

**574**

Leonard D. Munker, Wyoming Public Defender, and Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Patrick Day, Legal Intern, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Appellant pled guilty to one count of carrying a dangerous weapon with unlawful intent in violation of § 6–11–101, W.S. 1977, Cum.Supp.1982 [1] (this section was in effect at the time of this incident, but has been superseded by § 6–8–103, W.S.1977 (June 1983 Replacement)). He was sentenced, after a full hearing, to two to five years in the penitentiary. It is from this sentence and the judgment thereon that the appellant appeals. The sole issue on appeal, as worded by appellant, is as follows:

> "Whether the trial court abused its discretion in sentencing Appellant to a term of years in the Wyoming State Penitentiary, rather than placing him on probation."

The standard by which this court reviews sentences is well established and often quoted. We have repeatedly held that we are reluctant to review the length of a sentence imposed by a trial court if it is within the limits set by statute and that we will not disturb a sentence absent a clear abuse of discretion. *Wright v. State*, Wyo., 670 P.2d 1090, 1092 (1983), reh. granted (January 19, 1984 Order, Wyoming Supreme Court); *Eaton v. State*, Wyo., 660 P.2d 803, 806 (1983); *Taylor v. State*, Wyo., 658 P.2d 1297, 1300 (1983); *Daniel v. State*, Wyo., 644 P.2d 172, 178 (1982); and

---

1. Section 6–11–101 provides as follows:

   "(a) Any person who knowingly possesses, manufactures, transports, repairs or sells any firearm, knife, dirk, club, bludgeon, chain, rock, bottle, or any other dangerous or deadly weapon, or any explosive or incendiary apparatus, instrument or materials, with the intent to unlawfully threaten the life or physical well being of another, to commit assault or assault and battery or to inflict bodily harm or injury upon the person of another is guilty of a felony and, upon conviction, shall be punished by imprisonment in the penitentiary for not to exceed five (5) years.

   \* \* \* \* \* \*

   "(c) Nothing in this section shall be construed to apply to peace or law enforcement officers or to any other person authorized or required to carry any such weapons, while in the performance of their official duties."

*Jones v. State*, Wyo., 602 P.2d 378, 380, 381 (1979).

We have defined an abuse of discretion as follows:

" 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *,' " *Wright v. State*, supra, 670 P.2d at 1092, quoting *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

■ Sentence imposition involves consideration of two broad categories—the crime and its circumstances, and the character of the criminal. The latter of these categories could reasonably increase or decrease the criminal's sentence. His family background, education, intelligence, employment record, attitude, etc., may well bear upon the accomplishment of the purpose of the sentence. *Wright v. State*, supra.

" * * * While the punishment of a wrongdoer should be equal to the measure of his sin, the modern philosophy of penology is that the punishment should fit the offender, and not merely the crime, and the belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. Responsibility should be the basis of punishment, and individualization the criterion of its application." 24B C.J.S. Criminal Law, § 1974, p. 539.

A brief summary of some of the factors and philosophy involved in sentencing is included at length in the Wright case, supra, and will not be repeated here.

Therefore, we must look both to the circumstances surrounding the crime, as well as to the background of the appellant. This case arose from the following factual situation. On August 17, 1982, Judy Jackson, a teacher and librarian from Vancou-ver, British Columbia, was traveling with a bike touring group. She was riding her bike several miles ahead of the group when a man, wearing blue jeans and a ski mask and holding a gun, stepped into the road and ordered her to stop. She stopped and got off her bike, at which time the man took the bike into a culvert at the side of the road and demanded that Judy Jackson follow. He also at that time discharged his firearm into the air.

While this was happening, a pickup truck came over the hill and Judy Jackson stopped it and asked the driver for assistance. Another vehicle also stopped at approximately the same time. The man with the gun fled; law enforcement personnel were contacted; a search was begun; and the appellant was apprehended and charged with three counts of carrying a dangerous weapon with unlawful intent. The appellant pled guilty to one count, and the others were dismissed.

The appellant, Steven Clay Ventling, is a former highway patrolman. He was employed as such for the state of Wyoming from 1978 until September 1982, and was so employed at the time of the above-described incident. He was not, however, on duty at the time of the incident. He left the highway patrol to run for the office of sheriff of Carbon County.

The sentencing judge ordered a presentence investigation and report, and appellant's attorney made a lengthy statement to the judge, asking for parole before sentence, or probation. The prosecuting attorney, in her statement to the court, said in part:

"The fact that he ·stood to lose so much and chose to commit this crime is one of the reasons the State requests this Court deny probation in this matter. If a man choses [sic] to commit a crime like this, in spite of the fact of his pride in his job as a highway patrolman, and his respect that he received from the community, and in spite of the love of a supportive family, if that isn't enough to stop him

from committing a crime like this, I ask what good is supervised probation. * * *

\* \* \* \* \* \*

"The Probation and Parole Agent who worked with this Defendant also recommends that probation be denied. And on behalf of the State, I strongly recommend that probation be denied in this matter."

The appellant was given an opportunity to speak for himself, and he called witnesses to testify as to his character.

With all of this information before him, the judge sentenced the appellant to a sentence of "not less than twenty-four months nor more than sixty months," with credit given to time spent in the county jail. In regard to the sentence, the judge noted:

" * * * You come across as an excellent individual, one who is attentive to the needs of your family, who has comported excellently in your community, yet, Mr. Ventling, the underlying offense for which you're before the Court is of a most serious nature and it has to be taken into account the position of trust that you had assumed and for which you were engaged in, though not on duty on that occasion, but it was your sworn duty to, as a law enforcment [sic] officer, protect the very person that you did in fact terrorize by brandishing this gun and for which you say you have no accountability for your actions. There's no reason that you can give for this. But in the process you have, as was noted by the State's counsel, with particular asiduous [sic] care, attempted to conceal those activities in such a way that had it come to pass that you might not have been discovered, if those had been the facts of the case, you could have very well been emboldened to terrorize another victim and so on and so forth. So that whether it is true or not, it at least comes across from the evidence that this is a Jekell-Hyde [sic] situation. You did not do this in any manner characteristic to your background to the knowledge people had of you in the community, but you did do it and what would

have been the result if your actions had been completed would have placed you in a far worse position than you are today before this Court.

"Now, Mr. Ventling, the Court has taken into account, as Mr. Honaker noted the Court must in its sentencing standards, that you should be first of all given all consideration for probation. And I have given that consideration and I have weighed that against the proposition that you were a law enforcement officer at the time you committed a crime of the most base nature and that there were other factors that could have made it more serious, except the plea bargain agreements intervened to ameliorate the severity of other acts."

■ Appellant feels that the trial judge erred in not granting him probation based on the lack of prior criminal history, his reputation for being an involved and good family man, and for being active in the community. We have said before that the only right which a convicted defendant has for probation is that his petition therefor be considered by the sentencing court, and such petition must be granted or denied in the exercise of sound legal discretion, and not based on whim or caprice nor any ground not sanctioned by law. *Sanchez v. State*, Wyo., 592 P.2d 1130, 1137 (1979).

In a report by the President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*, p. 141 (1967), it was noted that:

" 'There is no decision in the criminal process that is as complicated and difficult as the one made by the sentencing judge. A sentence prescribes punishment, but it also should be the foundation of an attempt to rehabilitate the offender, to insure that he does not endanger the community, and to deter others from similar crimes in the future. Often these objectives are mutually inconsistent, and the sentencing judge must choose one at the expense of the others. * * * ' " 4 Wharton's Criminal

Procedure, § 609, fn. 14, p. 207 (12th ed. 1976).

 In this case, the sentencing judge had all the pertinent information before him. He listened to the appellant, his attorney, and several character witnesses; he had the benefit of a presentence report. The statute to which appellant pled guilty allows for a sentence not to exceed five years. The judge sentenced appellant to a period within that statutory maximum and gave his reasons therefor. We cannot say that this was a clear abuse of discretion.

We affirm.